**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| WELDALOY PRODUCTS CO.,<br>a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAMES KRAVEC,<br>an individual,<br><br>Defendant. | ) | Case No.:<br>Hon. |

Sean F. Crotty (P64987)
Michael J. Dauphinais (P84158)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7336
scrotty@honigman.com
mdauphinais@honigman.com

Attorneys for Plaintiff Weldaloy Products Co.

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Weldaloy Products Co. ("Weldaloy"), who brings this action seeking injunctive relief, states as follows for its Verified Complaint for Injunctive Relief against Defendant James Kravec ("Kravec"):

## INTRODUCTION

1. This is an action for preliminary injunctive relief in aid of arbitration. Plaintiff Weldaloy brings this action against Defendant Kravec seeking preliminary injunctive relief pending the conclusion of arbitration between the parties regarding Kravec's wrongful competition with Weldaloy in breach of his restrictive covenants with Weldaloy. As described in greater detail below, Kravec's bad acts constitute breach of contract and other unlawful conduct.

2. As a result of Kravec's unfair and unlawful actions, Weldaloy has suffered, and will continue to suffer, substantial and immediate harm, including the loss of confidential and proprietary information and damage to Weldaloy's employee and customer relationships.

3. Kravec's agreement with Weldaloy contains an arbitration provision. Weldaloy is pursuing separate relief in arbitration concerning Kravec's violations of his contractual obligations. Injunctive relief is warranted pending the outcome of that arbitration in order to prevent irreparable harm and preserve the authority of the arbitrator.

## PARTIES, JURISDICTION, AND VENUE

4. Weldaloy is a corporation formed under the laws of the State of Michigan, with its principal place of business located in Warren, Macomb County, Michigan.

5. Upon information and belief, Kravec is a resident of the State of Ohio. Kravec is a former employee of Weldaloy.

6. Jurisdiction is proper on the basis of federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff is seeking preliminary injunctive relief in a dispute subject to mandatory arbitration under the Federal Arbitration Act. This court has subject-matter jurisdiction to grant injunctive relief under 9 U.S.C. § 3 when such relief is required to prevent the arbitrator's ruling from being unable to return the parties to the status quo pro ante. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995).

7. In the alternative, jurisdiction is proper on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. Weldaloy is a citizen of Michigan and Kravec is a citizen of Ohio, so complete diversity of citizenship exists between Plaintiff and Defendant. More than $75,000 is in controversy.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant's unlawful conduct, including his breach of his contractual obligations to Plaintiff, took place in this District, the contract at issue was entered into in this District, and the injuries Plaintiff has sustained and continues to sustain as a result of Defendant's conduct were inflicted on Plaintiff in this District.

# GENERAL ALLEGATIONS

## Weldaloy's Business and Operations

9. Weldaloy produces forged products for the aerospace, electronics, oil and gas, power generation, manufacturing machinery, and other industries. These products are manufactured from copper, aluminum, and titanium. Weldaloy operates in a highly competitive industry where customer relationships and marketplace goodwill are critical to its success.

10. Weldaloy's business depends on representatives who work with clients to determine their needs for forged products.

11. Weldaloy then develops manufacturing plans that utilize its in-house forges to fill its clients' needs.

12. Because of the complexity of the manufacturing process and competitiveness of the industry, maintaining ongoing relationships with its clients is an integral part of Weldaloy's business.

13. To maintain these relationships, Weldaloy's representatives are provided with Weldaloy's confidential and proprietary information, which give Weldaloy a competitive advantage over other companies in the industry.

14. Weldaloy's confidential information includes, but is not limited to: plans, specifications, product data, know-how, customer lists, agent lists, price lists, or systems of Weldaloy.

15. To protect its confidential information, Weldaloy requires employees to abide by policies restricting access, dissemination, and use of confidential information. Weldaloy also requires employees who service customers and who have access to its confidential information to sign agreements protecting Weldaloy's interests in such information and relationships.

**Defendant Kravec's Employment at Weldaloy**

16. On August 10, 2020, Kravec began his employment with Weldaloy.

17. During his employment with Weldaloy, Kravec served as its Executive Director of Business Development. In this capacity, Kravec oversaw Weldaloy's sales team, which consisted of a marketing administrator, a customer service manager, two inside sales representatives, and two outside sales representatives. Kravec was one of Weldaloy's five highest-compensated employees.

18. Kravec serviced several of Weldaloy's largest customers. These accounts were provided to him by Weldaloy.

19. Kravec often learned of new business opportunities through the relationships he built and maintained as Weldaloy's Executive Director of Business Development.

20. Besides overseeing the sales team, Kravec was one of a few top executives at the company entrusted with managing a large expansion project for Weldaloy that would involve building new forges to increase the company's

capabilities. The expansion project included new construction design specifications and forge manufacturing capabilities identified by Kravec.

21. During his employment with Weldaloy, Kravec was provided with, and had access to, the company's confidential information, including, but not limited to, information relating to Weldaloy's key customer relationships, billing rates, preferences and needs of customers and other information relating to Weldaloy and Weldaloy's customers, and current and future business plans and strategies. Kravec also regularly received, had access to, and used confidential information regarding Weldaloy's planned expansion project.

**Defendant Kravec's Contractual Obligations**

22. As a condition of his status as a highly-placed executive, Kravec executed an Employment Agreement with Weldaloy on August 10, 2020 (the "Agreement"). **Exhibit 1.** The Agreement includes provisions on confidentiality, non-competition, and non-solicitation.

23. To protect Weldaloy's competitive business interests, Kravec expressly agreed to certain non-competition and non-solicitation obligations pursuant to the Agreement. Specifically, he agreed:

> 9.1. Employee agrees to use his or her best efforts to promote the business of the Company, and will not during the Employment Period, directly or indirectly, engage in activities which compete or conflict with the business of the Company or the business of any of the Company's affiliates (the "Group"). Employee further agrees that all

> business opportunities generated or learned about by Employee during the Employment Period must be serviced through the Company (except for passive investment opportunities unrelated to the business of the Company).

(Exhibit 1, Agreement, § 9.)

24. Further, Kravec agreed not to solicit Weldaloy's customers and employees during his employment and for eighteen months thereafter. The Agreement states:

> 9.2. During the Employment Period and for a period equal to 18 months thereafter, Employee agrees that he or she will not in any way (directly or indirectly, for himself or on behalf of, or in conjunction with any other person or entity) hire, induce, or influence another to hire or solicit, any person who was engaged as a customer, supplier or as an employee, agent, or independent contractor of the Group at any time during the Employment Period, or encourage any such person or entity to terminate employment or other business relationship with the Group.

(*Id.*)

25. Kravec also agreed to not to compete with Weldaloy for eighteen months after his employment ended. The Agreement states:

> 9.3. During the Employment Period and for a period equal to 18 months thereafter, Employee agrees that he or she will not in any way (directly or indirectly, for himself or on behalf of, or in conjunction with any other person or entity) (i) engage in or assist others in engaging in the Restricted Business in North America in any manner, (ii) have a direct or indirect interest in any person or entity that engages, directly or indirectly, in the Restricted Business in North America in any

> capacity, including as a partner, shareholder, member, employee, principal, agent, advisor, trustee or consultant, or (iii) intentionally interfere in any respect with the business relationships (whether formed prior to or after the Effective Date) between the Group and its customers or vendors. "Restricted Business" means any business that is in any way competitive with or to the Group's business, whether as conducted now or later during the Employment Period. Employee agrees that the 18 month periods set forth above will be "tolled" (or paused) during any period of Employee's non-compliance with this Section 9.

(*Id.*)

26. Kravec also agreed not to divulge any of Weldaloy's "information, plans, specifications, product data, know-how, customer lists, agent lists, price lists, systems, or any other trade secrets or confidential information or materials of the Group or its customers, learned, acquired or coming to his or her knowledge while performing his or her services as an employee of the Company" in perpetuity. (*Id.*, at § 9.4).

27. Kravec agreed that injunctive relief is appropriate for any breach of the Agreement, in addition to other damages, with the Agreement stating:

> 9.5. Employee understands and acknowledges that the above covenants are required for the fair and reasonable protection of the business of the Group and that violations of any of the covenants and agreements contained in this Agreement would cause irreparable injury to the Company and that the remedy at law for any violation or threatened violation thereof would be inadequate, and that the Company shall be entitled to temporary and permanent injunctive relief or other equitable relief without the

> necessity of proving actual damages. The Company shall also be entitled to any damages provided by law, including reasonable attorney fees, and the recovery from the other party of any and all salaries, fees, commissions, income, profits, or other remuneration or gain which Employee may have received or to which he or she may have been entitled to receive from or by reason of the conducting of any activity in violation of the terms, conditions, or covenants of this Agreement.

(*Id.*)

28. Finally, Kravec agreed that "[a]ny controversy or claim arising out of or relating to this Agreement (or Employee's employment with the Company) shall be settled by arbitration[.]" (*Id.*, at § 13.)

**<u>Defendant Kravec's Breach of Contract</u>**

29. On September 9, 2021, Kravec unexpectedly resigned from his employment with Weldaloy.

30. Kravec's resignation was effective September 24, 2021.

31. When he resigned, Kravec refused to provide any information about the identity of his new employer.

32. Indeed, Kravec took measures to conceal the identity of his new employer. For example, Kravec deleted all Weldaloy employees from his LinkedIn professional network. By doing so, Kravec prevented Weldaloy employees from receiving notifications when Kravec updated his LinkedIn profile to identify his new employer.

33. Upon information and belief, Kravec now serves as the Vice President of Sales at Weber Metals, Inc. ("Weber Metals"), which is headquartered in Paramount, California.

34. Weber Metals is a manufacturing company that produces forged parts for the aerospace, power generation, and electronics industry (i.e., the same industries served by Weldaloy).

35. Upon information and belief, Kravec met with representatives of Weber Metals in May 2021, while on a business trip for Weldaloy. Kravec submitted expenses for this trip and received reimbursements from Weldaloy.

36. Upon information and belief, Kravec later met with representatives of Weber Metals in June 2021 as well at an industry trade show. Kravec submitted expenses for this trip and received reimbursements from Weldaloy.

37. Upon information and belief, Kravec met with representatives of Weber Metals again in August 2021, again while on a business trip for Weldaloy. Kravec submitted expenses for this trip and received reimbursements from Weldaloy.

38. Upon information and belief, Kravec and Weber Metals planned his departure and direct competition with Weldaloy at these meetings.

39. Upon information and belief, Kravec used information obtained while working at Weldaloy to plan eventual competition with Weldaloy when he would start his employment with Weber Metals. For instance, while still employed at

Weldaloy, Kravec forwarded a Weber Metals executive examples of products similar to those produced by Weldaloy.

40. Upon information and belief, Kravec did so to ensure that Weber Metals would be able to manufacture the same products as Weldaloy and compete for the same customers.

41. Upon information and belief, Kravec continues to use Weldaloy confidential information retained after his resignation to compete directly against Weldaloy.

42. Upon information and belief, Kravec has disclosed the confidential and proprietary information of Weldaloy to others for his personal gain.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

43. Weldaloy reincorporates and realleges by reference each and every allegations contained in the preceding paragraphs of its Verified Complaint as though fully stated and set forth herein.

44. As a condition of his continued employment with Weldaloy, Kravec executed the Agreement. **Exhibit 1.**

45. Kravec has continuing obligations to abide by the terms of the Agreement, including the respective obligations covering non-disclosure, non-competition, and non-solicitation.

46. Kravec has continuing obligations under the Agreement not to compete against Weldaloy and to refrain from soliciting Weldaloy's employees and customers.

47. The restrictive covenants contained in the Agreement are enforceable because they are narrowly drawn; limited to a reasonable duration, line of business, and geographic scope; and are necessary to protect Weldaloy's competitive business interests in its confidential and proprietary information, customer and employee relationships, goodwill, and intellectual property rights.

48. As described fully above, Kravec has breached his post-employment obligations to Weldaloy by his bad acts, including, without limitation, competing with Weldaloy in the same marketplace and soliciting Weldaloy's employees and customers.

49. Kravec's continued breach of his obligations to Weldaloy has caused, and will continue to cause, Weldaloy to suffer irreparable damage as set forth above. Monetary damages will not fully compensate Weldaloy.

50. Weldaloy has no adequate remedy at law for Kravec's breaches of his obligations under the Agreement.

51. Under the terms of Kravec's Agreement, in addition to equitable relief, Weldaloy is entitled to recover an amount equal to "all salaries, fees, commissions, income, profits or other remuneration or gain which [Kravec] may have received or

to which he or she may have been entitled to receive from or by reason of the conducting of any activity in violation of the terms, conditions or covenants of this Agreement." (Ex. 1, at § 9.5).

52. As a direct and proximate result of Kravec's breaches, Weldaloy has been damaged, and Kravec has gained and benefited and will continue to gain and benefit in an amount that exceeds $75,000, exclusive of interests and costs.

**COUNT II – INJUNCTIVE RELIEF**

53. Weldaloy reincorporates and realleges by reference each and every allegations contained in the preceding paragraphs of its Verified Complaint as though fully stated and set forth herein.

54. Given Kravec's behavior, Weldaloy has a strong likelihood of success on the merits of its claims against Kravec. His Agreement provides for injunctive relief as a remedy for breaches of Kravec's contractual obligations. The Agreement further provides that such disputes will be resolved through arbitration.

55. Weldaloy has no adequate remedy at law because monetary damages will not completely compensate Weldaloy. Unless Kravec is enjoined from the conduct set forth below, Weldaloy will be irreparably harmed by:

(a) Disclosure of its confidential and proprietary information which is solely the property of Weldaloy;

(b) Loss of confidentiality of the information, loss of competitive position, loss of goodwill, and loss of business reputation;

(c) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

56. The harm to Weldaloy will substantially outweigh any harm to Kravec if injunctive relief is not issued.

57. The public interest will be furthered by the issuance of the injunction because it will support Michigan's public policy of enforcing reasonable contracts, preventing unfair competition, and preventing Kravec from benefiting from his wrongful acts.

58. The public interest will also be furthered by the issuance of the injunction because it will preserve the authority of the arbitrator to resolve disputes as agreed to by Kravec in the Agreement.

59. Therefore, the Court should enjoin Kravec from breaching his covenant not to compete and his covenant not to solicit, as well as from using Weldaloy's confidential and proprietary information to compete unfairly with Weldaloy. The injunctive relief sought is set forth in more detail below.

## PRAYER FOR RELIEF

WHEREFORE, Weldaloy respectfully requests that this Court enter a judgment in its favor and order:

1. Temporary, preliminary and permanent injunctions enjoining Kravec as follows:

a. Enjoining and restraining Kravec from further breaching the Agreement, including by working for Weber in any capacity;

b. Enjoining and restraining Kravec from soliciting any customers or employees of Weldaloy;

c. Enjoining and restraining Kravec from using, disclosing, disseminating, revealing, misappropriating, or threatening to misappropriate Weldaloy's confidential and proprietary information; and

d. Incorporating in any preliminary or permanent injunction a tolling provision, whereby the protection periods specified in the Agreement are tolled and extended for the length of time in which the Court determines that Kravec was in breach of his obligations;

2. That this matter be held in abeyance, with injunctive relief remaining in place, pending the disposition of the arbitration claim being concurrently filed against Defendant;

3. An award to Weldaloy of its attorneys' fees and costs incurred in prosecuting this action; and

4. Such other and further relief as this Court deems just and equitable.

Respectfully submitted,

HONIGMAN LLP
Attorneys for Plaintiff

By: /s/ Sean F. Crotty /
Sean F. Crotty (P64987)
Michael J. Dauphinais (P84158)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7336
scrotty@honigman.com
mdauphinais@honigman.com

Dated: October 22, 2021

**VERIFICATION**

STATE OF MICHIGAN )
) *ss*
COUNTY OF MACOMB )

Andrew Smith, being first duly sworn, deposes and states: I am the Chief Operating Officer of Plaintiff Weldaloy Products Co. I have personal knowledge of the facts set forth in the above complaint and if called as a witness I am competent to testify to them. The facts set forth in the complaint are true and correct to the best of my knowledge, information and belief, except those allegations which are made upon information and belief and those allegations which set forth legal conclusions. I declare under penalty of perjury under the law of Michigan and 28 U.S.C. § 1746 that the Verified Complaint is true and correct.

________________________
Andrew Smith

Subscribed and sworn to before me, this
21 day of October, 2021.

________________________
Notary Public, OAKLAND County, MI
ACTING IN MACOMB
My commission expires: 01-24-2026

Rendell L Thomas
Notary Public of Michigan
Oakland County
Expires 01/24/2026
Acting in the County of MACOMB